Good morning, your honors, and may it please the court. Joe Donahue on behalf of plaintiff appellant Karen Moretti. I would like to reserve five minutes for rebuttal. Your honors, this case involves numerous issues regarding whether and to what extent several different actors may be held liable for injuries that were sustained by Ms. Moretti as a result of her ingestion of the prescription drug metoclopramide. In the court below, the generic defendants Wyeth and Schwartz were dismissed on the basis of the fact that they had not manufactured nor sold the drug that Ms. Moretti had ingested. The court found that the lack of a relationship between the brand defendants and the plaintiff precluded the finding that there was a duty owed to her in order to prevent the injuries that she sustained. With respect to generic defendant PLEVA, the court found that the Supreme Court's decision in PLEVA Inc. v. Mincing precluded all claims that were asserted in Ms. Moretti's complaint as an operation of federal preemption. Just a brief statement of the facts, and I'm not going to belabor them at all, but Reglan was a drug that was approved in the late 70s, early 80s, based upon studies that had been performed and submitted to the FDA by Wyeth. Wyeth then began an aggressive marketing campaign for use of the drug beyond 12 weeks for long-term conditions and included misleading and false information in the label that it crafted. Subsequently, they sold their rights to Reglan and the ability to control the content of the labeling to Schwartz. Prior to that time, generic defendant PLEVA began manufacturing a generic version of the drug metoclopramide, incorporating the same language that had appeared in the label crafted by Wyeth. With respect to the court's finding that there was a requirement that there be a relationship between the plaintiff and the brand defendants in order for there to be a duty, that determination is explicitly refuted by the Nevada Supreme Court case in Mollem, and then also cited in the briefing was an older case, Wright v. Shum, involving a dog bite. Mollem is particularly concerned because I thought, correct me if I'm wrong, that because Nevada had not adopted the restatement section 310 and 311, and the Nevada Supreme Court had rejected fraudulent concealment claims in an analogous case, that that was the basis for its saying, at least with respect to the branded defendants here who had no relationship, that is, their drug had not been purchased by your client. You're saying that is not the basis that they went on? There's some other basis that they went on? There were actually several bases. I believe there were five specific items that were listed and discussed by the court in their those that remain being fraud and negligence types of claims. And there was numerous arguments that were presented with respect to those claims. You're correct that one of the reasons cited by the court was that the Nevada Supreme Court had not adopted negligent misrepresentation statement out of the restatement as a cause of action outside of a business transaction. The court also relies upon Mollum, though, for the statement that in order for there to be a duty in between two parties, there must exist a relationship. And the court's statement in that regard misunderstands the facts in Mollum and what the court stated there. The court does state that there is an important relationship that is required, but it is not between the actor, the defendant, and the plaintiff. It is between the defendant and the third party, which is the defendant and the other actor under the language of the restatement 324A. In this case, that would be the relationship between the brand defendants and Defendant Pleva. It's undisputed that the brand defendants exercised a certain level of control over the drug metoclopramide. They were the only entity prior to 2007 that could change or alter the information that appeared in that label. After 2007, Congress empowered the FDA to impose certain changes upon the manufacturers, and shortly thereafter, the FDA imposed a black box warning on metoclopramide. All right. You know, to some degree, at least in my mind, we have to segregate this a little bit. Clearly, you've got a preemption issue, and we're going to talk about that. But then you have the question of whether there is a state law distillate that remains based upon what happened in this case, which that's how I look at it. Yes. What you seem to be doing is saying that with respect to the branded defendants, we've got to get into this area of the conclusion, because they did what they did with the FDA because the law required them to do that. And doesn't that change the analysis if they are required by law to do something as opposed to a volitional act on their part that was normally contemplated by the restatement in 324? Well, I believe that their actions were volitional. The marketing, the aggressive marketing, the false information were all volitional acts, and that's where the liability is based here. But what we also have are the preemption decisions, which make very clear, which had not been clear prior to their issuance, that it was the brand defendants who exercised control over the design of these drugs and their warnings. And that's what Malum says, and Wright v. Shum, that it's that control that they exercise, the failure to intervene in the marketing. Because as I said, the studies that were performed by the brand defendants and the label were the basis upon which PLEVA could market their generic version of the drug. So without their continued marketing of Reglan, PLEVA would have no longer been able to have marketed metoclopramide, the generic version. So you're correct that the issues are somewhat intertwined, but you're also correct that they're separate to a large degree. And I don't necessarily believe that it's a distillate or what's left over after the preemption. I believe that they were in operation concurrently prior to, and it just perhaps became more clear, and some public policy reasons. I'm just unclear on your state law claims. It's the relation between the brand and the generic that you're focusing on? Well, no, it's not. It's the duty that they owe to Ms. Moretti by virtue of their relationship. By virtue of their relationship. Correct. Because they did owe a duty to Ms. Moretti. And I've quoted some language out of the Malum case. And what they say there is, if Dow knew its testing was being relied upon to develop products that would be implanted in humans, it had a duty to use due care in providing reasonably accurate and complete information. That is precisely the same situation that we have here. These manufacturers, Wyeth and Schwartz, developed this body of information, which by drug. Now, it was PLEVA's drug that eventually caused the injuries. And so therefore, the product liability claims and warranty claims would only be able to be asserted against PLEVA, the actual manufacturer. Malum also states in there very clearly, it says that in order to prevail on her claims, the Malums had to show either that Dow was negligent or that they had manufactured a product. It was not necessary that they show that they manufactured the product. And in fact, as we know, Dow Chemical did not manufacture the product. Can I switch to the generic defendants? Yes. Yes. PLEVA. There have been a lot of recent cases. And one of the cases that you rely on, this Fulgenzi case, talks about the allegation that there was a label change by the brand defendants in 2004 that PLEVA did not follow. That's correct. But I didn't see anything in this record that suggested that there was a label change. And one of the cases that was recently, that just was recently issued that was cited to us, said that this was a request for a brand change or a label change by the brand name defendants that resulted in what I believe this record reflects, this black box label that was issued in 2009. Can you clarify, have you asserted any place in this taking this generic drug? And that is not asserted, Judge Bolton. And one of the reasons is that in the, during the course of discovery, the most likely course of her use of the drug ended prior to that 2004 label change that you're referencing. It was not the 2009 label that was discussed in Fulgenzi. It was a 2004 label change. That being said, all of the information regarding PLEVA's lack of updating their warning came after the fact. Once through discovery or additional discovery by the defendant, those facts became apparent. At the time of the briefing that was done in this case, that was not known. In fact, there was a 2003 change made by the branded manufacturers as well, which was not adopted by PLEVA. But those allegations do not appear in the complaint and they were not briefed to the court. And that really brings up a follow-on question, which is that based upon the complaint as it currently exists, and I think you had, what, two cracks at changing it before, you've got a But would you agree that as it currently exists, that the complaint doesn't state a cause of action? I would not, Your Honor. And I would say that because with specifically with respect to the generic defendants, the section that begins the allegations pertaining to PLEVA, it states that generic defendants failed to act as required by the FDA. Now, what we have in the most recent Supreme Court decision addressing generic preemption is this discussion of parallel claims. And what parallel claims are are when your state law cause of action parallels the requirements imposed by federal law. And the majority of the allegations in this complaint as asserted against PLEVA are that they failed to perform their duties that were imposed by federal law. Let me say this slightly differently. Let's assume for a moment that given the change in the law, let's assume, arguendo, that we find some state law cause of action that survived. But it's not well pled because nobody knew what was going to happen with Supreme Court. Are you asking us to send this back to the district court with instruction that it allow you to amend your complaint? Or are you saying, hey, we're willing to move forward on the complaint as currently pled? I would agree with you that the allegations in the complaint could be more specifically and more well pled. As I stated to Judge Bolton, just in the proceedings going on while this case has been on appeal, numerous facts have been uncovered that were unavailable at the time that the complaint was originally filed, which I believe was in 2008. But you don't believe that you need to re-plead in order to be successful in sustaining your causes of action? Well, one of the strange things about the procedural posture of this Judge Smith is that the case had gone through discovery. So the record is full of information that, while consistent with the allegations, may not be specifically pled. And the generics motion was decided on a 12B6 on the complaint. And that standard requires that the court find that there are no set of facts that could exist under which the plaintiff could prevail. Now, where the record contains facts that show that there is a right to recovery, I think that you haven't met your burden for dismissal under 12B6. I kind of feel like this case is shifting on me up here, so maybe that's just my perception, so help me out. Did I hear you say that the 2004 FDA-approved labeling change actually isn't applicable, in fact, because of what happened before with Ms. Moretti? I believe that, and it's not exactly clear. Under the allegations of the complaint, the timing of her usage I'm referring to, under the allegations of the complaint, she stopped using the drug in March of 2005, which would have made that change applicable. During discovery, pharmacy records only produced prescription records for prescriptions of metoclopramide going to mid-2004. So the change was approved by the FDA in July of 2004. And if that is, in fact, the state of facts, then the change would not have been applicable to Ms. Moretti. So it seems to me that it puts us in a little bit of an odd position, because one of the big issues we have to decide is the impact of the Supreme Court and whether there would be a circuit split with other circuits having to do with preemption. And in my mind, a lot of that boils down to whether or not part of the claim is a post-2004 warning claim, which was a mandatory, as I understand it, am I correct that that was a mandatory action by the FDA? Correct? Well, the FDA approved the change made by the brands. And then that would be what you would put on, the brands would have put on their labeling. But if somehow that 2004 falls out, I then have to say to myself, why would I decide all those other legal issues? So am I missing something? At least as to the generic. And I see that I'm out of time, Your Honor, if you don't mind me continuing. The 2004 label change was not in the complaint and it was not addressed to the court in the briefing. As I said, there are some other factual issues that have come to light since. But I believe that this court's unanimous decision in Stengel versus Medtronic, those types of claims, the failure to conduct your post-marketing safety surveillance and reporting requirements, those are explicitly pled in this complaint and were argued and defended before the court and they rejected them. Those claims, I believe, are the easiest and most basic way for this court to look at the issues. These are requirements that were imposed upon them that they failed to do. It's a failure to warn negligence type of claim. And there is no conflict because it is a failure to comply with duties that were imposed by federal law. Again, we know we've gone over a little bit, but it's the judge's questions. Following up on my state specifically the exact time period that your client took the drug, the generic drug. I want to understand that so I understand the interplay with the 2004 regulation change. What is the time period? In the record, the only indication is that Ms. Moretti took the drug from April 2003 until March 2005. That is my understanding. But there's nothing in the record about the label change in that case. That is correct. That is correct, Your Honor. That stuff that you're telling us now, that isn't new. I mean, that's not a new case. That's information that you had at the time this litigation was before the district court. No, that is not correct. The discovery of PLEVA's failure to incorporate that language into the case was just before the decision in PLEVA v. Mincing was issued that that discovery was made. Why is that a big discovery? The defendant never provided the documentation showing that. And you didn't have any documentation from your client? No, that is correct. That's another issue is that the label that PLEVA uses does not go to pharmacies. So Ms. Moretti never received a label. But you did have briefing post-Mincing to the district court. That is correct. And this issue was never raised. And I believe that the reason for that was because at that time, the thinking was that Ms. Moretti most likely ended her usage prior to the 2004 label change. That's correct. All right. We'll hear from Eric and Brandon. Thank you. Thank you. Good morning, Your Honors. Kenneth Shanmugam of Williamson Connolly. I'm appearing this morning on behalf of the brand defendants Wyeth and Schwarz. May it please the Court, it is undisputed that the brand defendants did not manufacture or sell the metoclopramide that Ms. Moretti ingested. Ms. Moretti nevertheless contends that the brand defendants can be liable for injuries allegedly suffered from the use of generic drugs manufactured and distributed by their competitors. Now, in our view, two fundamental and subtle principles of Nevada tort law foreclose that novel theory of liability. First is the product identification principle. That is, the principle that a defendant may not be held liable for physical injuries caused by a product if the defendant did not manufacture or sell the product. Second is the duty principle, the principle that a defendant owes a duty only to individuals who take the defendant's own product. The defendant owes no duty to warrant of the risks associated with a product manufactured by a competitor. Now, a plaintiff fails to identify a single case applying Nevada law that holds a defendant liable under even remotely similar circumstances. And as we point out both in our principle brief and in our supplemental brief, courts applying the law of other states, including all six federal courts of appeals that have now considered the issue, have overwhelmingly held that these same fundamental principles of tort law foreclose materially identical claims. For those reasons, the district court correctly held that plaintiff's claims against the brand defendants are foreclosed and its judgment as to the brand defendants should be affirmed. Now, I want to go directly to Mr. Donohue's principle argument this morning, which tracks the principle arguments in his brief, namely the argument that the brand defendants somehow voluntarily undertook a duty to plaintiff as the consumer of a generic product. And this is, of course, the argument that is based on the Nevada Supreme Court's decisions in the Dow Chemical case and then also the Wright case, which plaintiff cites in her reply brief. This is the so-called special relationship argument? Well, this is really the – an argument for an exception to ordinary duty principles. And let me sort of place this argument in what I think is the appropriate context. First of all, I think it's important to realize that for plaintiff to have a claim under state law against the brand defendants, plaintiff has to overcome both of these hurdles, the product identification principle and the duty principle. Now, Mr. Donohue really didn't address the product identification principle in his argument today. He instead argued solely about the question of whether or not there's a duty. And we certainly would submit that the product identification principle, which is embodied in a series of Nevada Supreme Court principles, would independently foreclose plaintiff's claim. But as to a duty, plaintiff does not dispute that a duty is an element of all plaintiff's remaining claims against the brand defendants, nor do I hear Mr. Donohue to dispute that as an ordinary matter, a duty under Nevada law does require a relationship between the parties. And among other cases, we cite the Wiley case for the proposition that mere foreseeability is insufficient. In order to have a duty under Nevada law, you have to have a relationship between the parties. Now, I really understand Mr. Donohue to be arguing that in some sense there is an exception here under the principle that is embodied in Restatement 2nd, Section 324A, the so-called Good Samaritan principle. And that's the principle of tort law, which I think is an established principle of tort law in Nevada as elsewhere, that a defendant can voluntarily undertake a duty to third parties. That's the dog bite case. That is the dog bite case and also the Dow Chemical case. And I think that that's the sort of familiar principle that all of us learned in law school, that if an individual, for instance, steps into traffic to direct people around a traffic accident, and if that person acts negligently, that person could conceivably be liable. But the reason why that principle doesn't apply here is really the simple reason that a brand defendant in no way voluntarily undertakes a duty, really, either to its generic competitors or to consumers of generic products when that brand defendant puts a product out onto the market. The brand defendant undertakes a duty only to consumers of its own product. And when the brand defendant puts its labeling out, that labeling is directed to consumers of its own product and is intended to be reviewed only by those consumers. Now, in response to that fairly intuitive point, Mr. Donohue really points to Federal law and he makes the argument that a brand defendant controls the labeling of a generic defendant. And I think that's really not correct as a matter of how Federal law operates. It is certainly true that when a brand defendant puts labeling out on the market, the brand defendant has a duty to consumers of its own product and can be liable to those consumers. But a generic, when it makes the decision to enter the market, while it does have an And so, for instance, if the generic defendant, in fact, does not comply with the obligation of sameness, if the generic defendant has a somewhat different label, it could potentially be liable unless the claim, of course, is preempted. And, of course, that's one of the issues in this case with regard to the generic defendants, all of which is really a long way of saying that as a matter of State tort law, brand defendants have a duty to consumers of their products and generic defendants have a duty to consumers of their products. And so it may very well be that the duty with regard to generic defendants is not actionable because any such claim would be preempted as a matter of Federal law. But our submission is simply that as a matter of fundamental principles of tort law, the duty runs only to consumers of defendants' own products, and Federal law in no way modifies the relevant analysis. And, again, I think that the Dow chemical case and the dog bite case, the Wright case, are illustrative because they are so obviously distinguishable. In the Dow chemical case, you had essentially a corporate parent who was not the manufacturer of the silicone implants in question, but that corporate parent had undertaken to test the very silicone in that product. And the Nevada Supreme Court relied on the combination of that testing and the corporate relationship, the degree of control on the part of the corporate parent in holding that there had been a voluntary undertaking in that case. So, too, in the dog bite case, you had a landlord who had said to the tenant who was the owner of the dog, look, you've got to keep this dog inside or on a leash or else I'm going to essentially terminate your lease. And that was the voluntary undertaking on which the Nevada Supreme Court relied, the fact that the landlord had undertaken to do something about the problem of the dangerous dog but had not done enough and, therefore, could be liable on much the same theory as my individual who goes out into traffic. All of which is to say that those cases are fundamentally different for the simple reason that there is a voluntary undertaking. And when a brand puts its product out onto the market, the brand in no way undertakes a duty to individuals who consume what is a product not of a corporate affiliate but instead of a competitor. I would just make one other point because I know my half of the argument is rapidly drawing to a close. And that is simply the point that this Court is, of course, sitting as an eerie Court in diversity. And at a minimum, if this Court were to recognize this novel theory of liability, it would need to have some indication in the Nevada case law that the Nevada state courts would recognize a claim of this variety. Our fundamental submission is that there is no such indication in the Nevada case law, nor is there any suggestion that Nevada would deviate from the fundamental principles of tort law that so many courts have accepted. On your perspective, the brand defendants, I gather that you believe that the complaint as it presently exists is fatally defective and that no amendment would make any difference at all. Well, that is certainly true as to the brand defendants. And indeed, the brand defendants were named in an earlier version of the complaint, the first amended complaint. That complaint was actually subsequently amended after summary judgment was entered as to the brand defendants. So actually, the operative version of the complaint is the second amended complaint at pages 100 to 129 of the excerpt of the record, which does not name the brand defendants at all. Thank you. Good morning. Good morning. Jeff Peck for PLEVA. Your Honors, the same claims, the same theories, the same allegations that are made in this case against PLEVA have been made in numerous cases and have been barred by the Third Circuit, the Fourth Circuit, the Fifth Circuit, the Sixth Circuit, the Eighth Circuit, the Ninth Circuit in Gaeta, of course, the Tenth Circuit, and the Eleventh Circuit. And one of those cases is the Eighth Circuit is a companion case of sorts called Moretti versus activists or PurePAC, in which Mrs. Moretti sued, making the same allegations to other generic companies, Activist and Mutual, whose product that she took. See, Mrs. Moretti alleges that she took product from TEVA, she took product from PLEVA, she took product from activists or PurePAC, and she took product from Mutual. All of those in this period that's alleged in the complaint that goes to 2005. Now, there's no specific allegations to your point, Judge Bull, not only as to the time period of use specifically, but as to PLEVA's use in terms of when she used PLEVA. That's who's at issue in this out, in this case. But the Court found, the Court found in the Eighth Circuit that these exact same claims, these exact same theories were barred. And as a matter of fact, Judge Davis in the District of Minnesota compared the complaint here with the complaint in his case and the complaint in Mensing and said, they're all basically the same. They're all failure to warrant claims. And the Eighth Circuit affirmed that. And the reason why all these courts have come up with this same decision, it comes down to a very simple thing. And it's this. No matter how these things are titled, no matter what semantic games are played, whether you call them parallel claims, whether you call them implied warranty, whether you call them fraud by concealment, you come down to two things that the plaintiffs are asking the generic companies to do to avoid liability. Different design or different warnings. And Mensing and Bartlett have dealt with those and said, those claims are preempted. Those claims cannot be pursued. And the other thing that you see coursing through the plaintiff's complaint is, well, you could have taken the product off the market. And there's even ---- Before you bring us to that, I understand that one of the possibilities here, clearly you've got the preemption issue, but there's nothing in the preemption argument that I'm sure you're aware of. And that is that the generic, in this case your client, could not have matched the information that the FDA required about the length of usage. And you didn't do that in this case, as I understand it. Why does that not fall outside the preemption area? Well, two responses to that, and I'll take the legal point on it first, Your Honor. And I think that if you look to the Fifth Circuit's decision in Morris, that, and lastly, the Fifth Circuit got it right. What they said is, is that that claim, that quote ---- I think they got it wrong, but let's go ahead with that. Okay. The failure to update theory, as it were, is really an attempt to enforce a federal obligation. There is no obligation under any state law anywhere that obligates a generic drug company to match its label to the product. Let's talk about that. Can I just hear the end of your answer? Yes. But then the second point is, that claim is not in this case. That claim is simply not in this case. The labeling change that you're referencing, Your Honor, was one that was approved for the brand on July 27, 2004. And as counsel has conceded, they have no allegation whatsoever that PLEVA failed to make that label change in this case, or that their client took metoclopramide manufactured by PLEVA after that date. No allegation whatsoever in this case. So that claim is simply not in the case. Okay. Let me ask you this. We're talking arguendo here, okay? Putting aside the facts of the drug. The FDA says, unlike what it said before, you should only use this for a maximum of 12 weeks. You've got brand, not brand, but Company B, who manufactures a generic that is identical. Brand B, or rather, Company B, fails to put on its label that you should only use this for 12 weeks. Someone takes it longer than 12 weeks and is seriously injured by that as a result of taking the generic. Do you believe, putting aside the facts of this case for a moment, do you believe in that scenario, that that would be an independent state action that could survive? I do not, Your Honor. And why is that? The reason is, is because the obligation, again, of the generic company to match the language comes exclusively and solely from federal law. It fits right within, frankly, this Court's decision in NIDIC, which points out that if the obligation comes solely from federal law, which it does, to match a brand, it's not, you know, in these situations, it's not a decision by the generic company that, oh, let's put the words here, let's use a different font size, let's bold it. It has to be exactly, it has to go in the same place. And that requirement that it be the same place, the same words, the same font size comes exclusively from federal law. From your perspective, the example that I gave would be totally preempted by federal law a la Morris, right? Yes, that's correct, Your Honor. But wouldn't, if the state law is complementary and doesn't require more, doesn't that allow a state law claim, the so-called parallel claim? Well So if PLEVA was required by federal law to match, and they failed to match, which is what federal law required, and the state has a complementary duty to require adequate warnings, and they violated the federal law, couldn't that also be the parallel claim, if those were the facts of this case? Two responses, and I see I've, my time is, may I answer? Okay, thank you. Your Honor, first of all, parallel claim, as you know, is something that comes from express preemption. I know Your Honor's written on that. That is, the question when you talk about parallel claim is whether you have a carve-out from an express preemption provision. We are in the area here of implied preemption, which means it's impossible to do something in one, and we've talked about that in terms of mencing, but there is also the Buckman impossibility, and there is the Buckman standing issue. And what Buckman says, again, is that if it comes solely from federal law, if it is a duty that comes from federal law, then it cannot be pursued as a private right of action. Now, the hypothetical that you just gave is comparing the duty to match, or the requirement to match under federal law, with the requirement to provide an accurate label under state law, correct? I understood your hypothetical. Those two things are not parallel, because the regulatory decisions that are made by FDA as to what should go into the labeling are not made based upon state law considerations. The test for adequate warning under state law is not the same thing, and it's not a situation where the state has a requirement that you match the brand label. You know, it gets into what they talked about in mencing, which is differentiating the federal regulatory process from what state requires, state demanding an adequate label. They're two different things, and they're not parallel claims. And parallel claims, as this Court relied upon the Fifth Circuit's decision in Hughes, in the Stengel decision, well, the Fifth Circuit said in Lashley, Hughes is different. It's expressed preemption under the Medical Device Act. This is implied preemption under the Hatch-Waxman Act. Those are different opinions that came out the other day from, in Eckert, in which the words parallel claim were used. There was no citation for that, no context, but Lashley spoke definitively to that and said that parallel claim is not something that is a creature of implied preemption under Hatch-Waxman. Implied preemption under Hatch-Waxman, a separate and different regulatory scheme for generic drugs that the Supreme Court spoke of. So you believe that the Hatch-Waxman implied preemption applies here? Absolutely. Bars all the claims. Thank you for the question. If for some reason it didn't bar all the claims, then is there an alternative basis that you've urged for affirming the district court, other than the preemption? At this juncture, Your Honor, it is just on preemption. There were some proceedings down in the district court before we got to the preemption where we had summary judgment in that. But at this, for purposes of these proceedings for this court, it's on preemption. And also with respect to this record and what was pled by the plaintiff, if I understand you correctly, this whole notion that there was this new label in, is it July 2005? It was approved for the brand on July 27th, 2004. 2004, excuse me, 2004. Yes. But that that really wasn't pled here as a foundation vis-a-vis an obligation of the generics? Correct. Nor will I tell the panel parenthetically, those are the facts. We have pharmacy records. We know that she last took it in for a plea for product in 2003 from those pharmacy records. Then the allegation that she took it after the label change is not there, and that's We have not seen that certainly as to PLEVA. I still think there would be problems with the theory for the reasons I've articulated, but it's not of record anywhere here. It's certainly not pled or argued. Well, I guess what's in the complaint, as I recall, is that there's something through 2005? Is that where the complaint stands at this point? That is where the complaint stands, but it is Okay. Okay. Thank you. We'll give you two minutes for rebuttal. Thank you, Your Honor. I'm going to be very brief. Just as a point of clarification, I believe I may have caused some of this confusion, because the facts in the record support the fact that Ms. Moretti was never provided by any warning or label from any of the generic manufacturers whose drugs she took. That is the reason that we don't know the content of the label that was in existence at the time she was taking the drug. None was provided. The testimony in the record is that the pharmacy had attached some information to the bag that she purchased, which she did not know the contents of but discarded. But there is no assertion here that any manufacturer provided either her or her physician with information. Did she run that last statement by me that it was attached, but she threw it out, and therefore she doesn't know what was attached? That's what she said. She said at her deposition, she said whenever I received my prescriptions from the pharmacy back during this time, there was some documentation attached. She said, I don't know what was in there. I never looked at it. I asked my doctor regarding the information about these drugs. So it's unknown whether those documents that were stapled to her pharmacy were actually pharmacy printouts regarding the drug or just the receipt or whatever else. But from what you said earlier with the generic manufacturer, they have to provide the bulk warning. It's the pharmacy that then is supposed to pass it along. So whether the warning was the same or not the same doesn't have anything to do with what the pharmacy gave her that she threw away. And that's actually Allison versus Merck, which says that the manufacturer cannot delegate its duty to warn to another entity. So they could not delegate their duty to warn Ms. Moretti to the pharmacy. And the other issue is that I thought you said, I had never heard this before, I thought you had said earlier that when a generic manufacturer provides the warning, they provide it in some bulk fashion as opposed to with some other method. And if I may, Your Honor, that is a federal requirement. That is the minimum requirement that when the drug leaves their manufacturing facility to go to the pharmacy, it must be accompanied by a label. And that's the only label that is provided. Now, typically what happens, particularly more recently, is that the pharmacy provides some sort of information, usually an unbiased source of information from several different sources, that they provide with their prescription. But that is not information that is provided by the generic manufacturer or the branded manufacturer. That's a third-party entity. Thank you very much. Thank you. Case just argued of Moretti versus Wyeth is submitted. I thank all of you for the briefing especially and also for your arguments this morning. And we're adjourned.
judges: Bolton, McKeown, Smith